SHARTSIS FRIESE LLP
ARTHUR J. SHARTSIS (Bar #51549)
MARY JO SHARTSIS (Bar #55194)
LISA A. JACOBS (Bar #230364)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email:  ashartsis@sflaw.com
        mjshartsis@sflaw.com
        ljacobs@sflaw.com

Attorneys for Plaintiff
SHARTSIS FRIESE LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHARTSIS FRIESE LLP,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN RETIREMENT SERVICES, LLC dba JPMORGAN COMPENSATION AND BENEFIT STRATEGIES as Successor in Interest of CCA STRATEGIES LLC and CHICAGO CONSULTING ACTUARIES, LLC and DOES 1-10,<br><br>Defendants. | Case No. CV 08-1064 (SC)<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, PROFESSIONAL NEGLIGENCE, NEGLIGENT MISREPRESENTATION, BREACH OF FIDUCIARY DUTIES AND DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Complaint filed: January 24, 2008 |

Plaintiff Shartsis Friese LLP alleges as follows:

**PARTIES**

1.  Shartsis Friese LLP (hereafter "SF" or "Plaintiff") is a limited liability partnership headquartered in San Francisco, California, constituted for the practice of law, and formerly known as Shartsis, Friese & Ginsburg LLP. SF brings this action on its own behalf and on behalf of its partners or former partners for whose benefit CCA performed the services described below.

2.  Plaintiff is informed and believes and based thereon alleges that Defendant JPMorgan Retirement Services, LLC, doing business as JPMorgan Compensation and Benefit

Case No.:
CV 08-1064 (SC)              **FIRST AMENDED COMPLAINT**

1  Strategies, ("JPMorgan CBS") is the successor in interest of CCA Strategies LLC, formerly
2  known as Chicago Consulting Actuaries LLC and collectively referred to as "CCA".  At all times
3  relevant hereto, CCA was in the business of providing consulting, administrative and actuarial
4  services, including computations, allocations and related consulting services and advice in
5  connection with, among other things, retirement plans such as profit sharing and 401(k) plans.  At
6  all times relevant hereto, CCA maintained an office in the San Francisco Bay Area and performed
7  services in the City and County of San Francisco, California.

3. SF is informed and believes that in or about November 2006, or at some earlier time, CCA was acquired by defendant JPMorgan CBS.  JPMorgan CBS is named as a defendant in this action as the successor in interest of CCA.

4. SF does not know the true names and capacities of the fictitiously named defendants sued herein as Does 1 through 20, and on that basis sues them by their fictitious names.  When SF ascertains the true names and capacities of the Doe defendants, SF will amend this Complaint accordingly.  SF is informed and believes and on that basis alleges that each of the fictitiously named defendants is in some way liable to SF.

**FACTS**

5. The professional services provided by CCA to SF that are the subject of this action were undertaken pursuant to an oral agreement or understanding entered into in San Francisco, California and were to be performed by CCA in whole or in part in San Francisco, California.

6. SF is the sponsor and serves as administrator of the Shartsis, Friese & Ginsburg LLP Profit Sharing/401(k) Plan (the "Plan"), originally adopted in 1989, restated effective July 1, 1999, as amended in 2002 and 2006.  From on or about February 13, 2001 through October 2006, SF retained CCA to assist it in the administration of the Plan for the benefit of Plan participants by providing required computations, allocations and related consulting services in connection with the Plan because SF did not have the expertise to perform these functions itself.  CCA also provided professional services to SF in designing, establishing and administering a cash-balance pension plan, which was effective January 1, 2002.  CCA was retained by SF to advise it regarding the optimum way in which it could maximize the partners' contributions to the Plan and

to the cash balance pension plan consistent with certain limitations on costs to SF.

7. In offering its services to SF, CCA represented that it had the professional expertise to perform these services in a competent and professional manner. SF relied on CCA's expertise and followed its advice in connection with its and its partners contributions to the Plan for the benefit of the Plan participants.

8. Tim Mahannah ("Mahannah") was the representative of CCA who advised SF concerning the Plan. SF provided Mahannah/CCA with a copy of the Plan as restated in 1999. CCA agreed to review the Plan to advise SF on maximizing the contributions of the partners and minimizing other expenses consistent with and in compliance with applicable law. CCA also agreed to advise SF on the maximum amount of partner contributions to be made by each partner consistent with certain limitations on costs to SF. CCA, through Mahannah, provided professional advice, computations, valuations and compliance testing regarding the amount of annual contributions and allocations to be made under the Plan by SF and its partners for the 2000, 2001, 2002, 2003, 2004 and 2005 Plan years, which were relied on by SF and its partners. SF and its partners made contributions to the Plan from 2000 through 2005 in reliance on the specific amounts Mahannah advised and represented to it were proper under the Plan and applicable law and consistent with SF's goals, but which instead caused SF to incur expenses it otherwise would not have incurred.

9. SF specifically retained CCA and relied on its expertise to review the Plan and determine and perform the computations, allocations and related functions required by the Plan because SF did not have the expertise to determine and perform these allocations, computations and other functions itself. SF relied entirely on CCA to provide it with the proper maximum partner contributions and allocations and related appropriate non-partner contributions and allocations, consistent with certain limitations on costs to SF. SF retained CCA for this purpose, and paid all of CCA's bills for services in providing the advice, computations, allocations and other functions required to assure SF's compliance with the Plan and applicable law. CCA knew that SF and its partners were relying on its advice concerning their contributions to the Plan each year and in performing SF's fiduciary duties to the Plan participants. CCA's advice was an

Case No.:
CV 08-1064 (SC)                   - 3 -
**FIRST AMENDED COMPLAINT**

integral part of SF's fulfillment of its fiduciary duties to Plan participants. CCA never indicated that it was giving its advice on allocations and making computations based on a Plan different from the Plan in effect at the time CCA was retained and for the succeeding five years or that in fact it had never read or reviewed the Plan prior to giving its advice.

10. In accordance with its obligation to provide the advice necessary to enable the partners to make maximum partner contributions to the Plan while minimizing SF's expenses, CCA recommended and approved specific partner and non-partner contributions for Plan years 2000 through 2005. Mahannah represented that the contributions and allocations he directed to be made by SF and its partners under the Plan for each of its 2000 through 2005 Plan years were consistent with the Plan. In fact, Mahannah's directions were not in accordance with the Plan's allocation formula, and therefore the contributions were not in accordance with applicable law.

11. As a direct result of CCA's and Mahannah's errors, the Plan has failed to operate in accordance with its written terms, and, in addition, SF and its partners did not receive the benefits of the advice it and they sought from CCA. As a consequence, the Plan has lost or will lose its tax-favored status unless corrective action acceptable to the IRS is taken. Loss of the Plan's tax-favored status has significant financial implications for SF and all of the Plan participants, and may result in a substantial loss of retirement benefits for partners and other participants in the Plan.

12. After the acquisition of CCA by JPMorgan CBS in or about November 2006, SF retained a new consultant and actuary to provide advice concerning contributions and allocations under the Plan. SF was thereafter informed for the first time by the successor consultant and actuary of the errors that CCA had made in the prior years. Upon discovery of the errors, SF made a prompt investigation, and retained outside counsel and consultants at significant expense to advise SF regarding corrective action. SF representatives met with Mahannah and he acknowledged his failure to read the Plan documents before making the allocations and recommending the amount of contributions to be made.

13. Following discovery of Mahannah's errors, SF demanded in writing that CCA cooperate in addressing the problems that were created by those errors. JPMorgan CBS as the

1  successor of CCA has denied any responsibility for the contributions and allocations that CCA
2  advised and represented to SF were in accordance with the Plan for Plan Years 2000 through
3  2005 or for any damages or losses resulting therefrom.

4      14.    SF and its partners have incurred, and will continue to incur, significant expenses
5  and potential losses of well over one million dollars as a result of CCA's misrepresentations and
6  erroneous advice.

## FIRST CAUSE OF ACTION

**(Breach of Oral Contract Against All Defendants)**

    15.    SF incorporates by this reference each and every allegation of paragraphs 1 through 14 above.

    16.    By their oral promises and representations made to each other, CCA and SF for its and its partners' benefit entered into an oral contract on or about February 13, 2001.

    17.    Under the oral contract, CCA was obligated to carefully review the Plan and provide computations, allocations and related consulting services in connection with the Plan. Among other things, CCA agreed to review the Plan to determine whether it maximized the contributions of the partners and minimized other expenses consistent with and in compliance with applicable law, and agreed to advise SF on the amount of the various partner contributions to be made consistent with maximizing such contributions under the Plan.

    18.    SF has performed all of its obligations under the oral contract, except those as to which performance has been prevented or excused by acts and/or omissions of CCA. Among other things, SF has paid CCA substantial fees for its professional services in providing advice and allocations and doing the computations to ensure SF's compliance with the Plan and applicable law.

    19.    CCA breached the oral agreement by, among other things, failing to read or review the Plan and advising SF and its partners to make contributions and allocations under the Plan that were not in accordance with the Plan's allocation formula and were therefore not in accordance with applicable law.

    20.    As a direct and proximate result of CCA's breach of the oral agreement, SF and its

partners have suffered damages in an amount to be proven at trial substantially in excess of $25,000.

**SECOND CAUSE OF ACTION**

**(Negligence Against All Defendants)**

21. SF incorporates by this reference each and every allegation of paragraphs 1 through 20 above.

22. As a professional consultant and actuary hired by SF to perform consulting and actuarial services, CCA owed a duty to SF and its partners to exercise reasonable care in the performance of its services.

23. CCA failed to meet the applicable standard of care in performing consulting and actuarial services for SF by, among other things, failing to read the Plan documents and by advising SF and its partners to make contributions and allocations under the Plan that were not in accordance with the Plan's allocation formula and were therefore not in accordance with applicable law.

24. As a direct and proximate result of CCA's failure to exercise reasonable care in the performance of its obligations to SF, SF has suffered damages in an amount to be proven at trial substantially in excess of $25,000.

**THIRD CAUSE OF ACTION**

**(Negligent Misrepresentation Against All Defendants)**

25. SF incorporates by this reference each and every allegation of paragraphs 1 through 24 above.

26. Mahannah acting on behalf of CCA made the misrepresentations alleged in Paragraphs 8 and 10 above to SF's Chief Operating Officer, Paul Feasby, and other SF representatives concerning the amount of contributions to be made by Plan participants with the intention of inducing SF and its partners to act in reliance on the misrepresentations in the manner herein alleged, or with the expectation that SF would so act. Specifically, in or about late January or early February of each year from 2001 through 2006, Susan Wallin, Accounting Manager and later Controller of SF, provided to Mahannah of CCA a written census consisting of highly

1  confidential and sensitive personal information concerning each and every employee, associate
2  and partner of SF, including the date of birth, social security number, hours worked, and earnings.
3  The detailed confidential information was provided by Ms. Wallin to Mahannah in order for CCA
4  to do the necessary computations, allocations and testing and advise SF of the precise maximum
5  amount of contributions SF, its partners and other Plan participants could contribute to the Plan
6  for each plan year.  SF placed its trust and confidence in Mahannah to read the Plan and to
7  perform the required functions so that SF and its partners' contributions would be in accordance
8  with the Plan and applicable law.

9  27.  For Plan year 2000, Mahannah represented in writing in or about March of 2001 to
10 Ms. Wallin at SF the specific maximum amount each partner could contribute to the Plan with the
11 knowledge and expectation that she would communicate that amount to SF's partners and that
12 they would rely on it.  Similarly, Mahannah represented in writing the specific maximum amount
13 each partner could contribute to the Plan each year thereafter for Plan years 2001, 2002, 2003,
14 2004 and 2005 in or about March of the succeeding year by email or telephone with the
15 knowledge and expectation that the amount that he represented as the maximum would be
16 communicated to and relied on by SF's partners.  Ms. Wallin communicated Mahannah's advice
17 to SF and its partners, and each partner contributed the maximum amount in reliance on
18 Mahannah's representation.

19 28.  The representations made by Mahannah to Ms. Wallin and through her to SF's
20 partners were not true, and Mahannah made the representations without any reasonable basis to
21 believe they were true.  In fact, the maximum amount each partner could contribute was
22 substantially less for each Plan year than Mahannah represented.  SF and its partners were
23 unaware of the falsity of CCA's representations and reasonably relied on Mahannah's
24 representations by, among other things, retaining CCA to provide consultant and actuarial
25 services and by making the contributions in the amounts CCA represented through Mahannah
26 would be in accordance with the Plan and applicable law.

27 29.  As a direct and proximate result of CCA's negligent misrepresentations as herein
28 alleged, SF and its partners have been damaged in an amount to be proven at trial substantially in

excess of $25,000.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duties Against All Defendants)

30. SF incorporates by this reference each and every allegation of paragraphs 1 through 29 above.

31. SF placed its trust and confidence in CCA and Mahannah as a professional consultant and actuary to perform the consulting and actuarial services necessary for SF to meet its fiduciary duties to the Plan participants. CCA knew that SF had placed its trust and confidence in it to perform these services and owed fiduciary duties to SF and its partners in performing its professional services.

32. By engaging in the wrongful conduct described herein, including among other things, failing to read the Plan documents and advising SF and its partners to make contributions and allocations under the Plan in amounts that were not in accordance with the Plan's allocation formula and were therefore not in accordance with applicable law, CCA breached its fiduciary duties to SF.

33. As a direct and proximate result of CCA's breach of fiduciary duties as herein alleged, SF has been damaged in an amount to be proven at trial substantially in excess of $25,000.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief Against All Defendants)

34. SF incorporates by this reference each and every allegation of paragraphs 1 through 33 above.

35. An actual controversy has arisen and now exists between SF and Defendants concerning their respective rights and duties arising out of and relating to consulting and actuarial services provided to SF and its partners by CCA in that SF and its partners have incurred, or will continue to incur, significant expenses and damages caused by CCA's failure to read the Plan and provide advice on the proper contributions to be made to the Plan for which Defendants have denied any responsibility.

36. SF desires a judicial determination of its rights and a declaration that Defendants are responsible for all damages arising out of, among other things, CCA's advice to SF and its partners resulting in contributions and allocations being made under the Plan that were not in accordance with the Plan's allocation formula and were therefore not in accordance with applicable law.

**PRAYER**

WHEREFORE, SF prays for judgment as follows:

1. For a declaration that Defendants are legally responsible for damages to SF and its partners arising out of CCA's breach of oral contract, negligence, negligent misrepresentations and/or breach of fiduciary duties;

2. For money damages for all economic harm suffered by SF in an amount not less than $25,000 and according to proof;

3. For prejudgment interest;

4. For costs of suit, including attorneys' fees to the extent allowed by law; and

5. For such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable by a jury.

DATED: April 22, 2008                    SHARTSIS FRIESE LLP


By:   */s/ Mary Jo Shartsis*
      MARY JO SHARTSIS
      Attorneys for Plaintiff
      SHARTSIS FRIESE LLP

1788\036\1505609.1