SHARTSIS FRIESE LLP
ARTHUR J. SHARTSIS (Bar #51549)
MARY JO SHARTSIS (Bar #55194)
LISA A. JACOBS (Bar #230364)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: ashartsis@sflaw.com;
　　　　mjshartsis@sflaw.com
　　　　ljacobs@sflaw.com

Attorneys for Plaintiff
SHARTSIS FRIESE LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHARTSIS FRIESE LLP,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JP MORGAN CHASE & CO., JP MORGAN COMPENSATION AND BENEFIT STRATEGIES as Successor in Interest of CCA STRATEGIES LLC and CHICAGO CONSULTING ACTUARIES, LLC and DOES 1-10,<br><br>　　　　Defendants. | Case No. CV 08-1064 (SC)<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)**<br><br>Date: 　　July 11, 2008<br>Time: 　　10:00 a.m.<br>Courtroom: 1<br>Judge: 　　Hon. Samuel Conti<br><br>Complaint filed: January 24, 2008 |

Case No.:
CV 08-1064 (SC)　　OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
　　　　　　　　　　　AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF ISSUES TO BE DECIDED ............................................................. 2

III. PROCEDURAL HISTORY ............................................................................................ 2

IV. STATEMENT OF FACTS ............................................................................................. 2

V. ARGUMENT .................................................................................................................. 4

    A. In Ruling On The Motion, The Court Must Accept The Facts Pleaded As True And Draw All Inferences In SF's Favor ........................................................... 4

    B. SF Has Adequately Pled Its Claim For Negligent Misrepresentation ..................... 5

        1. Rule 9(b) Does Not Apply To SF's Claim For Negligent Misrepresentation ................................................................................. 5

        2. SF Has Nonetheless Pled The Misrepresentations With Particularity ........ 6

        3. SF Has Pled Reasonable Reliance On Mahannah/CCA's Misrepresentations ................................................................................. 9

    C. SF Has Stated A Claim For Breach Of Fiduciary Duty ......................................... 10

    D. If The Court Grants Any Part Of Defendants' Motion To Dismiss, Leave To Amend Should Be Granted ............................................................................. 13

VI. CONCLUSION ............................................................................................................. 13

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ascon Properties, Inc. v. Mobil Oil Co.*,
    866 F.2d 1149 (9th Cir. 1989) .................................................................................................. 13

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) ....................................................................................................... 5

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003) ....................................................................................................... 6

*Certilman v. Hardcastle, Ltd.*,
    754 F. Supp. 974 (E.D.N.Y. 1991) .......................................................................................... 6, 7

*City Solutions v. Clear Channel Communs., Inc.*,
    365 F.3d 835 (9th Cir. 2004) ....................................................................................................... 9

*Conley v. Gibson*,
    355 U.S. 41 (1957) ...................................................................................................................... 5

*Foster v. Allstate Ins. Co.*,
    1993 U.S. Dist. LEXIS 20851 (S.D. Cal. Oct. 7, 1993) ............................................................. 5

*Fresher v. Shell Oil Co.*,
    846 F.2d 45 (9th Cir. 1988) ......................................................................................................... 5

*Friedlander v. Nims*,
    755 F.2d 810, fn. 3 (11th Cir. 1985) .......................................................................................... 7

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ....................................................................................................... 5

*Grier v. Brown*,
    230 F. Supp. 2d 1108 (N.D. Cal. 2002) .................................................................................... 13

*Hamilton v. Willms*,
    2005 U.S. Dist. LEXIS 31629 (E.D. Cal. Nov. 22, 2005) ......................................................... 9

*Harley v. 3M*,
    42 F. Supp. 2d 898 (D. Minn. 1999) ........................................................................................... 9

*Liss v. Smith*,
    991 F. Supp. 278 (S.D.N.Y. 1998) ......................................................................................... 9, 10

*Mills v. Ramona Tire, Inc*,
    2007 U.S. Dist. LEXIS 89438 (S.D. Cal. Dec. 5, 2007) ......................................................... 5, 6

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ....................................................................................................... 7

*Negrete v. Fidelity and Guaranty Life Ins. Co.*,
    444 F. Supp. 2d 998 (C.D. Cal. 2006) ................................................................................ 10, 11

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

*Parks Sch. of Business v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) .................................................................................................. 5

*Peloza v. Capistrano United Sch. Dist.*,
  37 F.3d 517 (9th Cir. 1994) .................................................................................................... 5

*Sanderson v. HCA-The Healthcare Co.*,
  447 F.3d 873 (6th Cir. 2006) .................................................................................................. 7

*Scognamillo v. Credit Suisse First Boston*,
  2005 U.S. Dist. LEXIS 7162 (N.D. Cal. Mar. 21, 2005) ..................................................... 11

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ............................................................................................. 7, 8

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .................................................................................................. 9

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................................ 6

*Walling v. Beverly Enterprises*,
  476 F.2d 393 (9th Cir. 1973) ............................................................................................. 7, 8

*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981) .................................................................................................. 5

*United States v. White*,
  893 F. Supp. 1423 (C.D. Cal. 1995) ....................................................................................... 5

**STATE CASES**

*Alliance Mortgage Co. v. Rothwell*,
  10 Cal. 4th at 1239 ................................................................................................................. 9

*Anderson v. Eaton*,
  211 Cal. 113 (1930) .............................................................................................................. 11

*B.L.M. v. Saba & Deitsch*,
  55 Cal. App. 4th 823 (1997) ................................................................................................. 10

*Bowman v. MacPheeters*,
  77 Cal. App. 2d 795 (1947) .................................................................................................. 11

*Buckley v. Savage*,
  184 Cal. App. 2d 18 (1960) .................................................................................................. 11

*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.*,
  122 Cal. App. 3d 834 (1981) ................................................................................................ 11

*Langford v. Thomas*,
  200 Cal. 192 (1926) .............................................................................................................. 11

*Rattray v. Scudder*,
  28 Cal. 2d 214 (1946) ........................................................................................................... 11

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

| Case No.: | - iii - |
|---|---|
| CV 08-1064 (SC) | OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6) |

1 | *Wolf v. Superior Court*,
       107 Cal. App. 4th 25 (2003) .................................................................................................. 11

**FEDERAL RULES AND STATUTES**

F.R.C.P. 8 ........................................................................................................................................ 7

F.R.C.P. 9(b) ........................................................................................................................ 1, 5, 6, 7

F.R.C.P. 12(b)(6) ..................................................................................................................... 1, 4, 5

F.R.C.P. 15(a) ................................................................................................................................ 13

29 U.S.C. § 1104(a)(1)(B) ............................................................................................................... 9

**TREATISE**

Chodos, Rafael, *The Law of Fiduciary Duties*, p. 366 ................................................................... 11

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Plaintiff Shartsis Friese LLP ("SF" or "Plaintiff") hereby opposes the motion of Defendants JP Morgan Chase & Co. and JP Morgan Retirement Services LLC d/b/a JP Morgan Compensation and Benefit Strategies (collectively, "Defendants" or "JP Morgan") to dismiss the Third and Fourth claims for relief of Plaintiff's First Amended Complaint (the "FAC").

**I.**

**INTRODUCTION**

SF has asserted five claims for relief in this case. SF has alleged causes of action for breach of oral contract, negligence, negligent misrepresentation, breach of fiduciary duty and declaratory relief. Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss two claims for failure to state a claim: the Third Claim for Relief for negligent misrepresentation and the Fourth Claim for Relief breach of fiduciary duty. Defendants' motion should be denied because it ignores both applicable law and the FAC's allegations.

Defendants argue that SF's negligent misrepresentation claim should be dismissed for failure to state a claim because SF failed to plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendants also argue that this claim should be dismissed because SF is unable, as a matter of law, to prove that it reasonably relied on the misrepresentations at issue. Both of these arguments ignore the facts pled and are without merit. Although Rule 9(b)'s particularity requirement does not apply to SF's negligent misrepresentation claim, SF nonetheless pled the circumstances surrounding the misrepresentations, including the who, what, when and how of the misrepresentations, with sufficient specificity to allow Defendants to respond. SF also adequately pled facts showing that it reasonably relied on the misrepresentations, and whether SF's reliance was actually reasonable is a question of fact that must be left for the jury.

With respect to SF's breach of fiduciary duty claim, Defendants argue that the claim should be dismissed because SF has not, and cannot, plead the existence of a fiduciary relationship. However, a professional owes fiduciary duties to a client with respect to the performance of the services for which it was retained. Moreover, like with the reasonability of reliance, the existence of a fiduciary relationship is a question of fact that should not be decided

as a matter of law at the pleading stage.

For these reasons, discussed in detail below, Defendants' motion should be denied.

## II.

## STATEMENT OF ISSUES TO BE DECIDED

The questions before the Court are: (1) whether SF has stated a claim for negligent misrepresentation and whether that claim was adequately pled, and (2) whether SF has stated a claim for breach of fiduciary duty.

## III.

## PROCEDURAL HISTORY

SF filed its original Complaint on January 24, 2008 in the Superior Court for the City and County of San Francisco. On or about February 22, 2008 Defendants removed the action to this Court on the basis of diversity jurisdiction. On March 21, 2008 Defendants filed a motion to dismiss the Complaint's negligent misrepresentation and breach of fiduciary duty claims. Instead of opposing the motion, SF elected to file the FAC on April 22, 2008. On May 7, 2008, Defendants filed an essentially identical motion to dismiss the FAC's negligent misrepresentation and breach of fiduciary duty claims.

## IV.

## STATEMENT OF FACTS

This action arises out of the negligent provision of actuarial and consulting services by Chicago Consulting Actuaries LLC (collectively, "CCA")[1] to SF in connection with the administration of SF's 401(k) plan. SF is the sponsor and serves as administrator of the Shartsis, Friese & Ginsburg LLP Profit Sharing/401(k) Plan (the "Plan"), originally adopted in 1989, restated effective July 1, 1999, as amended in 2002 and 2006. FAC at ¶ 6. From on or about February 13, 2001 through October 2006, SF retained CCA to assist it in the administration of the Plan by providing required computations, allocations and related consulting services in connection with the Plan. *Id.*

---

[1] Defendant JPMorgan Retirement Services, LLC, doing business as JPMorgan Compensation and Benefit Strategies, is the successor in interest of CCA. *Id.* at ¶ 2.

Case No.:  - 2 -
CV 08-1064 (SC)    OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)

1    Tim Mahannah ("Mahannah") was the representative of CCA who advised SF concerning
2 the Plan. *Id.* at ¶ 8. SF provided Mahannah/CCA with a copy of the Plan as restated in 1999. *Id.*
3 CCA agreed to review the Plan to advise SF on maximizing the contributions of the partners and
4 minimizing other expenses consistent with and in compliance with applicable law. *Id.* CCA also
5 agreed to advise SF on the maximum amount of partner contributions to be made by each partner
6 consistent with certain limitations on costs to SF. *Id.* CCA, through Mahannah, provided
7 professional advice, computations, valuations and compliance testing regarding the amount of
8 annual contributions and allocations to be made under the Plan by SF and its partners for the
9 2000, 2001, 2002, 2003, 2004 and 2005 Plan years. *Id.* Contrary to its agreement,
10 Mahannah/CCA did not read the Plan documents prior to providing these services. *Id.* at ¶ 12.

11    Mahannah, acting on behalf of CCA, made representations concerning the amount of
12 contributions to be made by Plan participants to SF's Chief Operating Officer, Paul Feasby, and
13 other SF representatives, including Susan Wallin, Accounting Manager and later Controller of SF.
14 *Id.* at ¶ 26. For Plan year 2000, Mahannah represented in writing in or about March of 2001 to
15 Ms. Wallin the specific maximum amount each partner could contribute to the Plan. *Id.* at ¶ 27.
16 Similarly, Mahannah represented by email or telephone the specific maximum amount each
17 partner could contribute to the Plan each year thereafter for Plan years 2001, 2002, 2003, 2004
18 and 2005 in or about March of the succeeding year. *Id.* Mahannah further represented that the
19 contributions and allocations he directed to be made by SF and its partners under the Plan for
20 each of its 2000 through 2005 Plan years were consistent with the Plan. *Id.* at ¶ 10. Mahannah
21 made these representations with the knowledge and expectation that the amount that he
22 represented as the maximum would be communicated to and relied on by SF's partners. *Id.* at ¶
23 27. And, Ms. Wallin in fact communicated Mahannah's advice to SF and its partners, and each
24 partner contributed the maximum amount in reliance on Mahannah's representation. *Id.*

25    SF and its partners made contributions to the Plan from 2000 through 2005 in reliance on
26 the specific amounts Mahannah advised and represented to it were proper under the Plan and
27 applicable law and consistent with SF's goals. *Id.* at ¶ 8. The representations made by Mahannah
28 to Ms. Wallin and through her to SF's partners were not true, however, and Mahannah made the

Case No.:                                  - 3 -
CV 08-1064 (SC)    OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
                   AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)

representations without any reasonable basis to believe they were true. *Id.* at ¶ 28. Mahannah had no reasonable basis to believe the representations were true because he had not read the Plan documents prior to making the allocations and recommending the amount of contributions to be made. *Id.* at ¶ 12. After discovering the errors, SF representatives met with Mahannah who admitted he had not read the Plan prior to performing the computations and related services. *Id.*

SF specifically retained CCA and relied on its expertise to review the Plan and determine and perform the computations, allocations and related functions required by the Plan because SF did not have the expertise to determine and perform these allocations, computations and other functions itself. *Id.* at ¶ 9. SF relied entirely on CCA to provide it with the proper maximum partner contributions and allocations and related appropriate non-partner contributions and allocations, consistent with certain limitations on costs to SF. *Id.* CCA knew that SF and its partners were relying on its advice concerning their contributions to the Plan each year and in performing SF's fiduciary duties to the Plan participants. *Id.* CCA's advice was an integral part of SF's fulfillment of its fiduciary duties to Plan participants. *Id.* CCA never indicated that it was giving its advice on allocations and making computations based on a Plan different from the Plan in effect at the time CCA was retained and for the succeeding five years or that in fact it had never read or reviewed the Plan prior to giving its advice. *Id.*

As a direct result of CCA's and Mahannah's errors and misrepresentations, SF and its partners did not receive the benefits of the advice it and they sought from CCA because the advice was not in accordance with the written terms of the Plan. *Id.* at ¶ 11. As a consequence, the Plan may lose its tax-favored status unless corrective action acceptable to the IRS is taken. *Id.* As a result, SF has incurred and will continue to incur significant damages.

## V.

## ARGUMENT

**A.  In Ruling On The Motion, The Court Must Accept The Facts Pleaded As True And Draw All Inferences In SF's Favor.**

The standards to be applied in ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules are well settled and require little discussion. In considering Defendants' motion to

dismiss, the Court must construe Plaintiff's claims in the light most favorable to Plaintiff and take all allegations of material fact as true. *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Fresher v. Shell Oil Co.*, 846 F.2d 45, 46 (9th Cir. 1988). The court is also "required to . . . assume that all general allegations embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano United Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), cert. denied, 515 U.S. 1173 (1995); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court should not dismiss Plaintiff's claims unless it appears "beyond doubt" that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Fresher*, 846 F.2d at 46.

A Rule 12(b)(6) motion to dismiss is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). A Rule 12(b)(6) motion for failure to state a claim "is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Such a motion is appropriately granted only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *United States v. White*, 893 F. Supp. 1423, 1428 (C.D. Cal. 1995).

**B.  SF Has Adequately Pled Its Claim For Negligent Misrepresentation.**

**1.  Rule 9(b) Does Not Apply To SF's Claim For Negligent Misrepresentation.**

Defendants contend that SF's claim for negligent misrepresentation must meet Rule 9(b)'s heightened pleading requirements. Mot. at 6. Rule 9(b), however, "does not expressly apply to a claim for negligent misrepresentation." *Foster v. Allstate Ins. Co.*, 1993 U.S. Dist. LEXIS 20851, *6 (S.D. Cal. Oct. 7, 1993). While courts within the Ninth Circuit have generally found Rule 9(b) applicable to negligent misrepresentation claims, they have done so because the allegations supporting those claims were grounded in fraud. For example, where a plaintiff brings a fraud claim and a negligent misrepresentation claim based on the same set of factual allegations, courts generally have found Rule 9(b) to apply to both claims because, when based on the same allegations as the fraud claim, the negligent misrepresentation claim sounds in fraud. *See Mills v. Ramona Tire, Inc*, 2007 U.S. Dist. LEXIS 89438, *7 (S.D. Cal. Dec. 5, 2007) (noting that "Rule

1   9(b) ordinarily would not apply to a claim for negligent misrepresentation because knowledge of
2   falsity and intent to defraud are not elements of such a claim," but finding that plaintiff's claims
3   sounded in fraud because plaintiff incorporated every previous allegation of the complaint,
4   including that defendant's conduct amounted to "an intentional misrepresentation, deceit, or
5   concealment of a material fact known to the defendants"). *See also Benchmark Electronics, Inc.*
6   *v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (finding that Rule 9(b)'s heightened
7   pleading requirement is applied to a negligent misrepresentation claim when that claim is based
8   on the same underlying facts as a fraud claim).

9         In contrast, however, SF has not made any allegations of fraud. Instead, the FAC alleges
10  that CCA through Mahannah made representations that were untrue as a result of its negligence --
11  Mahannah's failure to read the Plan documents. FAC ¶ 28. "Under California law, the
12  indispensable elements of a fraud claim include a false representation, knowledge of its falsity,
13  intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d
14  1097, 1105 (9th Cir. 2003) (noting that even if Rule 9(b) were violated, "[t]he allegations of
15  innocent or negligent misrepresentation . . . would survive") (citation omitted). Because SF's
16  negligent misrepresentation claim does not allege two of the "indispensable elements of fraud" --
17  knowledge of falsity or intent to defraud -- SF's negligent misrepresentation claim does not sound
18  in fraud and does not require particularized pleading under Rule 9(b). *See id.* at 1104 (Rule 9(b)
19  "does not require that allegations supporting a claim be stated with particularity when those
20  allegations describe non-fraudulent conduct.").

21      **2.**    **SF Has Nonetheless Pled The Misrepresentations With Particularity.**

22        Even if Rule 9(b) were applicable to SF's negligent misrepresentation claim, Defendants'
23  motion should still be denied because SF has pled the circumstances surrounding the
24  misrepresentations with particularity.

25        While Rule 9(b) requires a plaintiff alleging fraud to state with particularity the
26  circumstances constituting fraud, its particularity requirement must be read in harmony with Rule
27  8's requirement of a "short and plain" statement of the claim. *Certilman v. Hardcastle, Ltd.,* 754
28  F. Supp. 974, 978 (E.D.N.Y. 1991) ("Rule 9(b) must be harmonized with the pleading

Case No.:    - 6 -
CV 08-1064 (SC)   OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)

1  requirement of Rule 8 that a plaintiff plead only a 'short and plain' statement of the claim (Rule
2  8(a)) and that each averment should be 'simple, concise and direct' (Rule 8(e)(1)).") (citation
3  omitted)); *Friedlander v. Nims*, 755 F.2d 810, 813, fn. 3 (11th Cir. 1985); *Sanderson v. HCA–The*
4  *Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 303 (2006). Thus, the
5  particularity requirement is satisfied if the pleading "identifies the circumstances constituting
6  fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v.*
7  *Kayport Package Express, Inc.*, 885 F2d 531, 540 (9th Cir. 1989). *See also Semegen v. Weidner*,
8  780 F2d 727, 731 (9th Cir. 1985) (The allegations must be "specific enough to give defendants
9  notice of the particular misconduct which is alleged to constitute the fraud . . . so that they can
10 defend against the charge and not just deny that they have done anything wrong."). Rule 9(b)
11 "does not require nor make legitimate the pleading of detailed evidentiary matter." *Walling v.*
12 *Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973) (citing 2A J. Moore, Federal Practice para.
13 9.03, at 1930 (2d ed. 1972)).

14 Defendants contend that the FAC's negligent misrepresentation cause of action does not
15 meet Rule 9(b)'s particularity requirement because "[t]here is no allegation as to when the alleged
16 representations were made, what reliance was placed upon them, who made them, whether they
17 were oral or in writing, or even the language of the representations themselves." Mot. at 7. In
18 making this argument, Defendants simply ignore the FAC's specific allegations as to each of
19 these items, i.e., the who, what, when, and how of the misrepresentations. The FAC alleges that
20 Mahannah, acting on behalf of CCA, made representations to SF concerning the maximum
21 amount of contributions SF, its partners and other Plan participants could make to the Plan, and
22 that Mahannah further represented that these amounts were proper under the Plan and applicable
23 law and consistent with SF's goals. FAC ¶¶ 8, 10.

24 The FAC also alleges that Mahannah made these misrepresentations to SF's Chief
25 Operating Officer, Paul Feasby, and to Susan Wallin, Accounting Manager and later Controller of
26 SF, in or about March of the succeeding year for Plan years 2000, 2001, 2002, 2003, 2004 and
27 2005. *Id.* at ¶ 26. Specifically, the FAC alleges that for Plan year 2000, Mahannah represented in
28 writing in or about March of 2001 to Ms. Wallin at SF the specific maximum amount each

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.:                                                - 7 -
CV 08-1064 (SC)    OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
                   AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)

1  partner could contribute to the Plan. *Id.* at ¶ 27. Similarly, the FAC alleges that Mahannah
2  represented by email or telephone the specific maximum amount each partner could contribute to
3  the Plan each year thereafter for Plan years 2001, 2002, 2003, 2004 and 2005 in or about March
4  of the succeeding year. *Id.* The representations made by Mahannah to Ms. Wallin were not true.
5  *Id.* at ¶ 28. The maximum amount each partner could contribute was substantially less for each
6  Plan year than Mahannah represented. *Id.* Mahannah made the representations without any
7  reasonable basis to believe they were true because Mahannah did not read the Plan documents
8  before recommending the amount of contributions to be made. *Id.* at ¶¶ 12, 28. SF further
9  alleges that Mahannah made these representations to Ms. Wallin with the knowledge and
10 expectation that she would communicate that amount to SF's partners and that they would rely on
11 it. *Id.* Ms. Wallin, in fact, communicated Mahannah's advice to SF and its partners, and each
12 partner contributed the maximum amount in reliance on Mahannah's representation. *Id.*

13 Thus, contrary to Defendants' contentions, SF did plead the specifics of the
14 misrepresentations, including the who (Mahannah to Mr. Feasby and Ms. Wallin), the what
15 (misrepresentations regarding maximum contributions to be made under the Plan)[2], the when (in
16 or about March of each year from 2001 through 2006) and the how (by email and telephone) of
17 the alleged misrepresentations, as well as what reliance was placed on the misrepresentations (SF
18 partners made contributions to the Plan in the amounts advised by Mahannah). These allegations
19 are more than sufficient to make Defendants aware of the particular misconduct at issue. *See*
20 *Semegen*, 780 F2d at 731. The pleading of detailed evidentiary matter, such as Mahannah's
21 represented maximum contribution for each partner for each Plan year, is not required. *See*
22 *Walling*, 476 F.2d 393, 397 (9th Cir. 1973). The FAC therefore alleges the misrepresentations
23 with sufficient particularity, and Defendants are on notice of the allegations against them and can
24 adequately prepare their answer.

---

[2] Defendants also contend that SF failed to allege that CCA's representation that it had the professional expertise to perform the actuarial services was false. Mot. at pp. 8-9. However, SF does not contend that this representation was a misrepresentation. That CCA represented it had the professional expertise to perform the requested services is contained in paragraph 7 of the Complaint. The misrepresentations that form the basis of SF's negligent misrepresentation cause of action are contained in paragraphs 8 and 10. *See* Compl. ¶ 26.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

### 3. SF Has Pled Reasonable Reliance On Mahannah/CCA's Misrepresentations.

Defendants also contend that SF's negligent misrepresentation claim should be dismissed because SF cannot have reasonably relied on CCA's representations. Mot. at pp. 7-8. Courts, however, ordinarily will not decide whether reliance was reasonable at the pleading stage because "[w]hether a party's reliance on alleged misrepresentations is reasonable is a question of fact." *Hamilton v. Willms*, 2005 U.S. Dist. LEXIS 31629, *28 (E.D. Cal. Nov. 22, 2005) (denying defendant's motion for summary judgment) (citing *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)); *Swartz v. KPMG LLP*, 476 F.3d 756, 762-763 (9th Cir. 2007) (declining, at the motion to dismiss stage, to conclude "beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief"). *See also City Solutions v. Clear Channel Communs., Inc.,* 365 F.3d 835, 840-841 (9th Cir. 2004) ("Because of the highly subjective nature of a causation analysis, the Supreme Court of California has instructed that the question whether a party detrimentally relied on the misrepresentation of another party is properly left to a jury."). "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Alliance Mortgage*, 10 Cal. 4th at 1239. This is not one of those rare cases.

Defendants argue that SF has a duty under the Employee Retirement Income Security Act ("ERISA") to know and understand the Plan's provisions and that because of this duty, SF could not have reasonably relied on Mahannah/CCA's representations regarding the maximum contributions allowable under the Plan. Mot. at pp. 7-8. This argument should be rejected because it is directly contrary to ERISA law. "ERISA does not impose a rule that fiduciaries be 'experts'." *Harley v. 3M*, 42 F. Supp. 2d 898, 907 (D. Minn. 1999). Instead, ERISA requires that fiduciaries act with "the care, skill, prudence and diligence that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Thus, if a fiduciary lacks the requisite education, experience, or skills it is not only permitted to seek independent advice, it is <u>required</u> to do so. *See id.*; *Liss v. Smith*, 991 F. Supp. 278, 297 (S.D.N.Y. 1998) ("where the trustees lack the requisite knowledge, experience and expertise to make the necessary decisions with respect to investments, their fiduciary obligations require them

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  to hire independent professional advisors").

2  The FAC alleges that SF did not have the expertise to perform the computations,
3  allocations and related consulting services in connection with the Plan. FAC ¶ 9. For this reason,
4  SF retained CCA, a business that provided consulting, administering and actuarial services to
5  401(k) plans, to assist it in performing those functions. *Id*. at ¶¶ 2, 9. CCA represented to SF that
6  it had the professional expertise to perform these services. *Id*. at ¶ 7. Hiring an advisor like CCA
7  was not only permissible under ERISA, it was <u>required</u>. *Liss*, 991 F. Supp. at 297. Accordingly,
8  SF has adequately pled reasonable reliance and whether SF's reliance.

9  The only case Defendants cite in support of their proposition that SF failed to plead facts
10 sufficient to show that it reasonably relied on Mahannah/CCA's representations is *B.L.M. v. Saba*
11 *& Deitsch*, 55 Cal. App. 4th 823, 836 (1997). That case, however, was an appeal of a grant of
12 summary judgment, and not a decision on the pleadings. Moreover, *B.L.M.* involved a plaintiff
13 that brought a negligent misrepresentation claim against the attorneys who represented its
14 adversary in a lawsuit. The court found plaintiff's reliance unreasonable because to hold
15 otherwise would "amount to creating a duty of professional care on the part of the attorney
16 toward a person with whom the attorney would be prohibited from maintaining a professional
17 relationship." *Id.* at 838. While a court may find that there are no circumstances under which a
18 person could reasonably rely on the advice of its adversary's attorney, no such determination can
19 be made here where SF hired CCA for the express purpose of advising it with respect to
20 maximum contributions under the Plan and then relied on the advice CCA provided.

21 For these reasons, Defendants' motion to dismiss SF's negligent misrepresentation claim
22 should be denied.

23 **C.    SF Has Stated A Claim For Breach Of Fiduciary Duty.**

24 Defendants' contention that SF has failed to, and cannot, state a claim for breach of
25 fiduciary duty also lacks merit. First, like with the reasonability of reliance, "[w]hether a
26 fiduciary relationship exists in any given situation is a question of fact" that should not be decided
27 at the pleading stage. *Negrete v. Fidelity and Guaranty Life Ins. Co.*, 444 F. Supp. 2d 998, 1003
28 (C.D. Cal. 2006) ("Because the Court must accept all allegations as true and construe those

1 allegations in the light most favorable to plaintiff at this stage of the proceedings, the Court
2 cannot say with certainty that 'plaintiff can prove no set of facts' entitling him to relief on a
3 breach of fiduciary theory.") (citation omitted).  *See also Scognamillo v. Credit Suisse First*
4 *Boston*, 2005 U.S. Dist. LEXIS 7162 (N.D. Cal. Mar. 21, 2005), *aff'd*, 2007 U.S. Dist. LEXIS
5 27157 (9th Cir. 2007), (denying motion to dismiss fiduciary duty claim, even though claim was
6 brought by plaintiff against financial advisors retained by the company on the other side of the
7 negotiating table from plaintiff and plaintiff had not identified a single case where a financial
8 advisor was found to owe fiduciary duties to the opposing party).

9 Second, and more importantly, every professional owes fiduciary duties to his client with
10 respect to the subject matter in which he was retained.

> "[W]hen a professional undertakes to render a professional service
> to a client, he enters into a fiduciary relationship with respect to that
> service.  The fiduciary relationship arises both because the
> professional is an agent . . . and because the professional's special
> skill and knowledge, which the client is presumed not to have,
> requires the client to depend on the professional and to place his
> trust in the professional: that leaves the professional in control of
> the relationship and in charge of its subject matter, and these are
> factors . . which, when present, give rise to fiduciary duty."

16 Chodos, Rafael, *The Law of Fiduciary Duties*, p. 366 (citing *Anderson v. Eaton*, 211 Cal. 113
17 (1930) (finding lawyer violated fiduciary duty to client); *Bowman v. MacPheeters*, 77 Cal. App.
18 2d 795 (1947) (finding doctor violated fiduciary duty to patient); *Electronic Equipment Express,*
19 *Inc. v. Donald H. Seiler & Co.*, 122 Cal. App. 3d 834 (1981) (analyzing statute of limitations
20 problem on fiduciary principles in case brought by a client against its CPA); *Buckley v. Savage*,
21 184 Cal. App. 2d 18 (1960) (articulating fiduciary duty of real estate brokers); *Rattray v. Scudder*,
22 28 Cal. 2d 214 (1946) (same); and *Langford v. Thomas*, 200 Cal. 192 (1926) (same)).  *See also*
23 *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 40 (2003) (Johnson, J., dissenting) ("Accountants,
24 like lawyers, owe a fiduciary duty to their clients," including "a duty not to supply negligently or
25 intentionally false information . . . .") (*citing* 6 Witkin, Summary of California Law (9th ed. 1988)
26 Torts, § 805, page 157).

27 SF hired CCA to perform professional actuarial and consulting services with respect to its
28 401(k) plan.  SF hired CCA because of its special skill and knowledge in this field, skill and

knowledge that SF did not have. SF has alleged that it placed its trust and confidence in CCA and Mahannah as a professional consultant and actuary to perform the consulting and actuarial services necessary for SF to meet its fiduciary duties to the Plan participants. FAC ¶¶ 9, 31. SF specifically retained CCA and relied on its expertise to review the Plan and determine and perform the computations, allocations and related functions required by the Plan because SF did not have the expertise to determine and perform these allocations, computations and other functions itself. *Id.* at ¶ 9. SF relied entirely on CCA to provide it with the proper maximum partner contributions and allocations and related appropriate non-partner contributions and allocations, consistent with certain limitations on costs to SF. *Id.* CCA knew that SF and its partners were relying on its advice concerning their contributions to the Plan each year and in performing SF's fiduciary duties to the Plan participants. *Id.* CCA's advice was an integral part of SF's fulfillment of its fiduciary duties to Plan participants. *Id.*

Defendants contention that performance of these services did not "require the exchange of confidences or the absolute duty of loyalty that mark a fiduciary relationship" is simply incorrect. Mot. at 5. SF has alleged not only that it retained CCA to provide professional services and to assist it in fulfilling its own fiduciary obligations under the Plan (FAC ¶ 31), as described above, it also entrusted CCA with highly confidential and sensitive materials for purposes of performing the services for which it was retained. *Id.* at ¶ 26. For example, Ms. Wallin provided Mahannah each year with a written census consisting of information concerning each and every employee, associate and partner of SF, including the date of birth, social security number, hours worked, and earnings. *Id.* Ms. Wallin provided this detailed confidential information to Mahannah in order for CCA to do the necessary computations, allocations and testing and advise SF of the precise maximum amount of contributions SF, its partners and other Plan participants could contribute to the Plan for each plan year. *Id.* Thus, for purposes of performing the services for which it was retained, CCA owed SF fiduciary duties.

Because SF has adequately alleged the existence of a fiduciary relationship with CCA and because the Court must accept SF's allegations as true and construe them in the light most favorable to SF, Defendants' motion to dismiss SF's breach of fiduciary duty claim should be

denied.

**D.  If The Court Grants Any Part Of Defendants' Motion To Dismiss, Leave To Amend Should Be Granted.**

If the Court is inclined to grant any part of Defendant's motion to dismiss, leave to amend should be liberally granted in accordance with Rule 15(a) of the Federal Rules of Civil Procedure and Ninth Circuit precedent.  *See* Fed. R. Civ. Proc. 15(a) ("leave [to amend] shall be freely given when justice so requires"); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (Ninth Circuit has "stressed Rule 15's policy of favoring amendments" and has "applied this policy with liberality"); *Grier v. Brown*, 230 F. Supp. 2d 1108, 1112 (N.D. Cal. 2002) (except in cases in which the court believes amending a pleading would be futile, courts typically grant leave to amend after granting a Rule 12 motion to dismiss).

# VI.

# CONCLUSION

For the foregoing reasons, SF respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.  Alternatively, if the Court grants any part of Defendants' motion, SF requests that the Court grant leave to amend.

DATED:  June 20, 2008                                         SHARTSIS FRIESE LLP


By:     /s/ *Lisa A. Jacobs*
         LISA A. JACOBS
         Attorneys for Plaintiff
         SHARTSIS FRIESE LLP

Case No.: CV 08-1064 (SC)     - 13 -     OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)